# Exhibit 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
---------------------------------------------------------------------------X
STEPHANIE GOMEZ, FRANK GUEITS,

        Plaintiff,                            Index No.:

      -against-

                                   **SUMMONS**

PETPIVOT, INC., AMAZON.COM, INC. a/k/a
AMAZON.COM SERVICES, INC. d/b/a AMAZON.COM
and AMAZON MARKETPLACE, XIANXUE ZHOU,
POPPY XIE,

        Defendants.
---------------------------------------------------------------------------X

Plaintiffs designate Bronx County as the Place of Trial. The basis of the venue is Plaintiffs reside within the County of Bronx County and the events giving rise to this action occurred within the Bronx, Borough of the Bronx, County of Bronx, New York City, State of New York.

**TO THE ABOVE-NAMED DEFENDANTS:**

       **YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve a copy of your Answer, or, if the Complaint is not served with this Summons, to serve a Notice of Appearance, on the Plaintiffs' Attorney within 20 days after the service of this Summons, exclusive of the day of service or within 30 days after the service is complete if this Summons is not personally delivered to you within the State of New York; and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded herein.

Dated: New York, New York
      June 9, 2025

                         By: _____
                             PEGGY L. COLLEN
                             Attorney for Plaintiffs
                             1430 Broadway, Suite 1105
                             New York, New York 10018
                             646-238-9757
                             pcollen@pcollenlaw.com

Case 1:25-cv-05622-LJL    Document 1-1    Filed 07/08/25    Page 3 of 48

**DEFENDANTS' ADDRESSES:**

PETPIVOT, INC.
1614 NW Riverscape Street
Portland, Oregon 97209

PETPIVOT, INC.
9570 Santa Anita Avenue, #B
Rancho Cucamonga, California 91730

AMAZON.COM, INC.
40 Terry Avenue, N.
Seattle, Washington 98109

AMAZON.COM, INC.
7 West 34th Street
New York, New York 10001

XIANXUE ZHOU
1614 NW Riverscape Street
Portland, Oregon 97209

POPPY XIE
1614 NW Riverscape Street
Portland, Oregon 97209

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

-------------------------------------------------------------------------X

STEPHANIE GOMEZ, FRANK GUEITS,

                 Plaintiff,                               Index No.:

         -against-

                                      **VERIFIED COMPLAINT**

PETPIVOT, INC., AMAZON.COM, INC. a/k/a
AMAZON.COM SERVICES, INC. d/b/a AMAZON.COM
and AMAZON MARKETPLACE, XIANXUE ZHOU,
POPPY XIE,

                Defendants.

-------------------------------------------------------------------------X

Plaintiffs **STEPHANIE GOMEZ** and **FRANK GUEITS** by and through their attorney,

**PEGGY L.   COLLEN, ESQ.**, by way of Complaint against Defendants, **PETPIVOT, INC.,**

**AMAZON.COM, INC. a/k/a AMAZON.COM SERVICES, INC. d/b/a AMAZON.COM**

**and AMAZON MARKETPLACE, XIANXUE ZHOU, POPPY XIE**, allege as follows:

## INTRODUCTION

1. This case arises from the horrific and preventable death of Plaintiff Stephanie Gomez's beloved cat, Sarabi, who was gruesomely crushed to death by a dangerously defective and deceptively marketed self-cleaning litter box, the Autoscooper 11 Open-top Self-cleaning Smart Cat Litter Box, Model ACT-58TW AS11 (the "Autoscooper 11" or "Autoscooper").

2. The product was designed, manufactured, distributed, and sold by Defendant PetPivot Inc., and distributed and sold through Amazon.com by Defendants Amazon.com, Inc., Amazon.com Services LLC, and Amazon Marketplace. Individual Defendants Xianxue

Zhou, President of PetPivot, Inc. and Poppy Xie, Chief Executive Officer are equally liable.

3. Marketed with claims of "advanced safety sensors," an "anti-pinch scissor-angle design," and promises of automatic shutoff when a cat enters, the product represented to consumers that it was safe, smart, and risk-free.

4. These claims were false, misleading, and dangerously deceptive. On January 27, 2025, Plaintiff Ms. Gomez returned home to find her cat Sarabi's lifeless body partially inside the Autoscooper 11, crushed to death by the device. The motor was still operating, the waste bin had dislodged, and half of Sarabi's torso had been fatally crushed and trapped inside. The device failed to detect her presence, stop the cleaning cycle, or release the mechanism.

5. Plaintiff Ms. Gomez used the product exactly as instructed. Nonetheless, the product catastrophically malfunctioned and inflicted a horrifying and senseless death.

## THE PARTIES

6. Plaintiff **STEPHANIE GOMEZ** was and still is an individual resident of the Bronx, the County of Bronx, Borough of the Bronx, City of New York, State of New York.

7. Plaintiff **FRANK GUEITS** was and still is an individual resident of the Bronx, the County of Bronx, Borough of the Bronx, City of New York, State of New York.

8. Defendant **PETPIVOT, INC.** was and is a foreign Domestic Business Corporation, registered in Oregon and authorized to do business in New York and doing business in New York, with its principal place of business at 1614 NW Riverscape Street, Portland, Oregon 97209.

9. At all relevant times herein, Defendant **PETPIVOT, INC.** designs, manufactures, markets, promotes, sells, distributes, and delivers the PetPivot ACT-58TW AS11 self-cleaning litter box, "Autoscooper 11 Open-top Self-cleaning Smart Cat Litter Box-PetPivot" ("Autoscooper 11" or "Autoscooper"), and markets, promotes, sells, distributes, and delivers its Autoscooper 11in the Bronx, the City of New York, County of Bronx, New York State.

10. At all material times, Defendant **PETPIVOT, INC.** was doing business in the State of New York.

11. Defendant **AMAZON.COM, INC. a/k/a AMAZON.COM SERVICES, INC. d/b/a AMAZON.COM** was and is a foreign business C Corporation registered in Delaware and authorized to do business in New York and doing business in New York. Its principal place of business is located at 410 Terry Avenue N., Seattle, Washington 98109, with a New York City office located at 7 West 34th Street, New York, New York 10001.

12. Defendant **AMAZON MARKETPLACE** was and is a foreign C Corporation and authorized to do business in New York and is doing business in New York, with its principal place of business located at 410 Terry Avenue N., Seattle, Washington 98109, with a New York City office located at 7 West 34th Street, New York, New York 10001.

13. Through the website amazon.com, Defendant Amazon offers an e-commerce marketplace in which Amazon and its users can connect with consumers via the internet. At all times hereinafter mentioned, Defendant Amazon was in the business of marketing, promoting, selling, distributing, delivering and placing into the stream of commerce, the PetPivot ACT-58TW AS11 self-cleaning litter box, "Autoscooper 11 Open-top Self-cleaning Smart Cat Litter Box-PetPivot" ("Autoscooper 11" or "Autoscooper"), and in the

business of marketing, promoting, selling, distributing, delivering the Autoscooper 11 in the Bronx, County of Bronx, the City of New York, New York State.

14. At all material times, Defendant **PETPIVOT, INC.** was doing business in the State of New York.

15. At all material times, Defendant **AMAZON.COM, INC. a/k/a AMAZON.COM SERVICES, INC. d/b/a AMAZON.COM** was doing business in the State of New York.

16. At all material times, Defendant **AMAZON MARKETPLACE** was doing business in the State of New York.

17. Defendant **XIANXUE ZHOU** was and is the President of **PETPIVOT, INC.** and serves as the agent for **PETPIVOT, INC. PETPIVOT, INC.** was and is a foreign Domestic Business Corporation registered in Oregon and authorized to do business in New York and is doing business in the State of New York, with its principal place of business at 1614 NW Riverscape Street, Portland, Oregon 97209. At all relevant times herein, **PETPIVOT, INC.** designs, manufactures, markets, promotes, sells, distributes, and delivers the PetPivot ACT-58TW AS11 self-cleaning litter box, "Autoscooper 11 Open-top Self-cleaning Smart Cat Litter Box-PetPivot" ("Autoscooper 11"), and markets, promotes, sells, distributes, and delivers its Autoscooper 11in the Bronx, the City of New York, County of Bronx, New York State. At all material times, Defendant **PETPIVOT, INC.** was doing business in the State of New York.

18. Defendant **POPPY XIE** was and is the Chief Executive Officer of **PETPIVOT, INC.** PETPIVOT, INC. was and is a foreign Domestic Business Corporation registered in Oregon and authorized to do business in New York and is doing business in the State of New York, with its principal place of business at 1614 NW Riverscape Street, Portland,

Oregon 97209. Its agent for service of process is XIANXUE ZHOU, located at 1614 NW Riverscape Street, Portland, Oregon 97209. At all relevant times herein, PETPIVOT, INC. designs, manufactures, markets, promotes, sells, distributes, and delivers the PetPivot ACT-58TW AS11 self-cleaning litter box, "Autoscooper 11 Open-top Self-cleaning Smart Cat Litter Box-PetPivot" ("Autoscooper 11"), and markets, promotes, sells, distributes, and delivers its Autoscooper 11in the Bronx, the City of New York, County of Bronx, New York State. At all material times, Defendant **PETPIVOT, INC.** was doing business in the State of New York.

## JURISDICTION AND VENUE

19. This Court has jurisdiction pursuant to CPLR §§ 301 and 302 because Defendants conduct substantial business in the State of New York, and the incident occurred within Bronx County.

20. Venue is proper in this Court under CPLR § 503 because Plaintiff resides in Bronx County and the causes of action arose therein.

## FACTS COMMON TO ALL CAUSES OF ACTION

21. This case arises from the horrific and preventable death of Plaintiff Stephanie Gomez's beloved cat, Sarabi, who was gruesomely crushed to death by a dangerously defective and deceptively marketed self-cleaning litter box, the Autoscooper 11 Open-top Self-cleaning Smart Cat Litter Box, Model ACT-58TW AS11 ("Autoscooper 11" or "Autoscooper"). Due to a catastrophic failure of the product's safety mechanisms, Sarabi was trapped and crushed in the Autoscooper while attempting to enter the unit during its cleaning cycle.

22. Sarabi was the Plaintiffs' beloved and cherished cat. On a rainy night in the Bronx, Ms. Gomez rescued Sarabi from the street, bringing her into her home, where she quickly became a beloved member of her family. Sarabi formed a deep bond not only with Ms. Gomez but also with Ms. Gomez's partner, Frank Gueits, and the other family cat, Sebastian, becoming an inseparable part of their lives.

23. In December 2024, Ms. Gomez received the Autoscooper 11 as a Christmas gift from her mother, who had purchased it through Amazon.com. Relying on the product's marketing, Ms. Gomez believed the device was "safe," "smart," and designed to protect cats from harm.

24. The Autoscooper 11 is marketed as a fully automated self-cleaning litter box that uses a rotating litter tray and sensor-based safety system to detect pet usage and initiate waste removal only when the unit is unoccupied. According to product descriptions and user materials, it features two primary components: a. A rotating litter tray that includes a sweeping upper panel designed to move in a semi-circular arc. During cleaning, the tray is meant to rotate backward to separate clean litter from clumps and push solid waste into a rear waste compartment. The unit is supposed to restore the litter to the front section for continued use. b. An automated sensor mechanism using infrared (IR) and Hall-effect sensors intended to detect the presence of a cat. These sensors are promoted as safety features that would prevent the unit from activating or continuing its cleaning cycle while a pet is nearby or inside.

25. The Autoscooper 11 is further advertised as remaining partially open at all times, with no complete enclosure that could entrap a pet. Marketing materials depict a harmless and

accessible litter station where pets can enter and exit freely, without exposure to hidden or forceful mechanical parts.

26. On December 26, 2024, Plaintiff Stephanie Gomez assembled the Autoscooper device in accordance with the manufacturer's instructions. Assembly of the unit simply required installing the four support legs to stand the machine upright for use, installing the waste container by placing the plastic bag liner and sliding the waste container under the unit, and plugging the unit into an electrical outlet. Based on the representations regarding safety and automation, Plaintiff Stephanie Gomez believed the Autoscooper to be safe for her two cats, Sarabi and Sebastian.

27. On December 26, 2024, Plaintiff Stephanie Gomez's cats started using the Autoscooper exactly as instructed.

28. On January 27, 2025, the day started like any other day for Plaintiff Stephanie Gomez. She kissed her cats, Sarabi and Sebastian, goodbye and went to work. Around 4:20 pm, when she returned home, as she exited the elevator, she heard her cat Sebastian crying in her apartment. When she opened the door to her apartment, Sebastian's frantic cries hinted at something being wrong. Plaintiff's heart sank as she turned on the hall light and heard grinding sounds coming from the Autoscooper, which was located in the living room next to the couch. Plaintiff's worst fears were confirmed. Sarabi was trapped in the automatic litter box. The upper half of Sarabi's body, including her head and half of her torso, was inside the machine, wedged between the rotating upper panel and the base. Her hind legs and tail hung out of the unit. The device remained powered on and continued forcefully pounding up and down in short intervals, driving into Sarabi's already crushed midsection. The machine's sensors glowed red, and its downward movements continued

pushing down on Sarabi, mercilessly. The waste bin was dislodged, and feces and litter were scattered over the floor. Plaintiff fell to the floor, screaming and crying in desperation. She quickly unplugged the device to stop its relentless motion, continuously crushing Sarabi's torso. Plaintiff tried to pry open the litter box to remove Sarabi's corpse, but the upper section of the machine remained tightly locked. Sarabi's lifeless body felt cold and stiff.

29. Plaintiff Stephanie Gomez, in a state of shock, called her partner Frank Gueits, crying hysterically. She told him, through sobs, "The cat is dead" and hung up the phone, unable to speak further.

30. When Mr. Gueits arrived, he saw Sarabi's lower body still protruding from the unit. Her hind legs were elevated off the floor. Litter and waste were strewn across the floor, and the waste bin had been dislodged. It was painful and tragic for him to see. The machine had pinned Sarabi, crushed the life out of her, and would not let go. Sarabi had suffered a long, painful death. When Mr. Gueits touched Sarabi to try to get her out the machine, she was so cold and stiff, and her body was contorted. The machine's rotating section had clamped down so forcefully that Sarabi's body could not be easily removed.

31. Mr. Gueits found a crematorium that was open late and made arrangements to have Sarabi picked up that evening.

32. Soon after calling the crematorium, a man from the crematorium arrived to retrieve Sarabi's remains.

33. Even though Sarabi was dead, Mr. Gueits could not bring himself to pry Sarabi out of the machine. He felt like he would hurt her in a strange way, so he asked the man from the crematorium to help pull her out. The staff member of the crematorium used one hand to

pull the hood up a little and scooped her out of the unit with the other hand. Sarabi's eyes were closed, and her front legs and nails were fully extended like she was fighting for her life. Sarabi's body was bent in an L-shape. The force of compression crushed Sarabi's torso, severing her spinal structure, leaving her body in an unnatural L-shape.

34. Ms. Gomez and Mr. Gueits both experienced significant emotional trauma. Ms. Gomez suffers from flashbacks, insomnia, and severe anxiety. Mr. Gueits, who had grown deeply attached to Sarabi and witnessed the condition in which she was found, remains profoundly affected by the incident.

35. Later that evening, on January 27, 2025, Mr. Gueits searched for information about the product and found an Amazon review from 2024 in which another customer warned that the device nearly killed their cat, stating in capital letters: "DO NOT BUY." The reviewer explained that they were able to intervene in time. That review has since disappeared or been removed from the platform.

36. Sarabi was more than a pet, she was a beloved and inseparable member of Plaintiff Ms. Gomez's family. Ms. Gomez will never forget the day she first found Sarabi: a trembling cat hiding beneath a white van in the pouring rain, her soft meows barely audible over the storm. That fragile moment marked the beginning of a powerful bond. From the instant Sarabi looked up at her, she captured Ms. Gomez's heart and filled her life with love, companionship, and comfort.

37. Ms. Gomez named her cherished cat Sarabi, in honor of Queen Sarabi, the strong and dignified lioness from Disney's *The Lion King*. Just like her namesake, Sarabi carried herself with quiet strength, grace, and an unmistakable regal presence. Her spirit was both gentle and commanding, a true queen in her own right. Sarabi had brought joy, love, and

healing into Ms. Gomez's life and home. Sarabi's bond with Plaintiff's other cat, Sebastian, was truly special. Their playful antics, cuddles, and adorable quirks lit up every day. Sarabi had a way of making Plaintiff smile, whether she was snuggled up in her favorite spot or "helping" with meals. Her love and presence brought Plaintiff endless joy, and she is grateful for the time they had together. Sarabi was an affectionate and comforting presence in every part of the household. Plaintiff will never forget Sarabi's sweet face, playful spirit, and the love she shared with the Plaintiffs and with Sebastian.

38. Plaintiff Stephanie Gomez's other cat and Sarabi's best friend, Sebastian, continues to suffer after witnessing the violent death of Sarabi. Sebastian's distress was palpable. After the incident, Sebastian refused to eat, meowed constantly, and paced back and forth, mourning the loss of his companion. Plaintiff Ms. Gomez had to hand-feed him for weeks, trying to bring some normalcy back to his life. To this day, Sebastian sleeps on the spot where the Autoscooper had killed Sarabi.

39. Plaintiff Ms. Gomez's grief is still raw, and every day, coming home without Sarabi feels like an unbearable weight of Sarabi's senseless death.

40. The psychological and emotional trauma Ms. Gomez endured upon finding Sarabi in such a horrific state is profound and ongoing. She suffers from recurring flashbacks, deep grief, and persistent anxiety. The shock of discovering her companion's crushed body, hearing the motor still running, and realizing that she did not have the strength to pry machine open to remove Sarabi's corpse has left her permanently shaken. A staff member from the crematorium, dispatched to retrieve Sarabi's remains, was the person who ultimately pried her crushed body from the interior of the litter box unit at Plaintiff's residence.

Case 1:25-cv-05622-LJL    Document 1-1    Filed 07/08/25    Page 14 of 48

41. Despite not being the owner of the device nor the legal guardian of the deceased animal, Brenda, Plaintiff Ms. Gomez's mother, contacted Amazon following the incident and secured a full refund. Shortly thereafter, in or about March 2025, Plaintiff's mother, Brenda, received a handwritten letter purporting to be from Poppy Xie, the CEO of PetPivot. The letter extended condolences for the loss of a "beloved cat" and offered $10,000 in compensation. It did not contain any company letterhead, physical address, or contact information beyond a personal email address: *poppy@petpivot.com*.

42. The letter was addressed to Plaintiff's mother, Brenda, who had purchased the Autoscooper 11 through Amazon.com as a gift for Plaintiff Stephanie Gomez. The product was never owned, installed, or used by Brenda. Nor was Sarabi, the cat who was fatally crushed, ever in Brenda's care. The product was used exclusively by Plaintiff Stephanie Gomez in Plaintiff Stephanie Gomez's home. Plaintiff Stephanie Gomez and her mother, Brenda, live in separate homes.

43. Plaintiffs believe the $10,000 offer was an effort to quietly settle or suppress claims relating to the product's fatal defect. The offer was made to an individual with no ownership interest in the product, no standing as a party injured by the device, and no right to compensation. The letter's lack of identifying business information and handwritten direct personal appeal further suggests an attempt to avoid formal accountability or legal responsibility.

44. The handwritten letter states,

Dear Brenda,
I hope this letter finds you in a moment of peace. My name is Poppy Xie, and I am the CEO of Pet Pivot.

Case 1:25-cv-05622-LJL    Document 1-1    Filed 07/08/25    Page 15 of 48

We are heartbroken to learn about the loss of your beloved cat and are deeply sorry for your loss. As fellow pet lovers, we understand that pets are cherished family members, and we are devastated that one of our products may have been involved in this tragedy.

At Pet Pivot, the safety and well-being of pets are our top priorities. We are conducting a thorough internal investigation to understand the circumstances surrounding this incident and to prevent such occurrences in the future.

As a small startup, we are committed to taking full responsibility and supporting you during this difficult time. We would like to offer you a compensation of $10,000 as a gesture of our sincere apologies and sympathy.

Please provide us with your preferred payment details so we can process this compensation promptly. You can reach me directly at poppy@petpivot.com at any time.

Once again we extend our deepest condolences and are here to support you in any way we can.

Sincerely,
Poppy Xie
CEO
Pet Pivot

There is no letterhead with an address and phone number.

45. Upon information and belief, PetPivot, Inc. and Amazon are and were aware that the product suffered from sensor failure and dangerous defects. Despite this knowledge, they continue to market, distribute, and profit from the sale of the Autoscooper 11 without issuing recalls, modifying the design, or providing appropriate warnings.

46. Sarabi's death was not an accident, it was the foreseeable and preventable result of corporate negligence and deception. Defendants' conduct is and was malicious, wanton, and undertaken with willful and reckless disregard for the safety of animals and the emotional well-being of their human companions. By knowingly placing a defectively designed and dangerously inadequate product into the stream of commerce, despite clear and foreseeable risks of fatal injury, Defendants demonstrated a conscious indifference to the life-threatening hazards posed to pets and to the severe emotional trauma inflicted

Case 1:25-cv-05622-LJL    Document 1-1    Filed 07/08/25    Page 16 of 48

upon owners who witness such preventable suffering and death. The egregious nature of Defendants' misconduct justifies the imposition of punitive damages to punish such callous disregard and to deter similar future misconduct in the manufacture and sale of pet safety products.

47. The thought of Sarabi suffering excruciating pain for hours, alone and scared, is a weight Plaintiff Stephanie Gomez will carry for the rest of her life. The worst part is that Sarabi had been trapped like that for hours, unable to free herself. Seeing Sarabi crushed, helpless, and lifeless continues to haunt Plaintiff Ms. Gomez. She keeps replaying the moment she found her. The position and condition of Sarabi's remains made clear that she had suffered a prolonged, excruciating, and avoidable death as a result of being crushed through her midsection by the defective machinery.

48. Sarabi had been stuck in the device with no ability to escape. None of the advertised safety sensors, neither the infrared nor Hall sensors, had functioned as promised. The product continued to operate with a cat inside, despite representations that it would automatically stop if motion or presence was detected.

49. Plaintiffs Stephanie Gomez and Frank Gueits bring this action not only to obtain justice for Sarabi but also to protect other pets and consumers from suffering similar tragedies. The pain of this tragic loss will never fade, but through this lawsuit, Ms. Gomez and Mr. Gueits seek accountability, reform, and an end to the reckless endangerment of animals by dangerous products falsely advertised as safe. Defendants must be held accountable and punished for their egregious acts and omissions, including the defective design, failure to warn, misrepresentations in advertising, and reckless disregard for animal safety and consumer protection.

## FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS

### Strict Products Liability – Defective Design

50. Plaintiffs repeat and reallege each of the preceding paragraphs as if fully set forth herein.

51. Defendants PetPivot Inc. designed, manufactured, marketed, distributed, and sold the Autoscooper 11 Open-top Self-Cleaning Smart Cat Litter Box (Model ACT-58TW AS11) to consumers throughout the State of New York, including in Bronx County.

52. Defendant Amazon.com, Inc., Amazon.com Services LLC, and Amazon Marketplace marketed, distributed, and sold the Autoscooper 11 Open-top Self-Cleaning Smart Cat Litter Box (Model ACT-58TW AS11) to consumers throughout the State of New York, including in Bronx County.

53. The product, as designed, was not reasonably safe for its intended or reasonably foreseeable use. It was marketed as a "smart," "automatic," and "safe" self-cleaning litter box intended to operate without supervision. However, the product incorporated an inadequately protected motorized cleaning mechanism that posed a foreseeable and fatal hazard to cats using the litter box.

54. The Autoscooper 11 was equipped only with infrared (IR) and Hall effect sensors to detect a cat's presence and prevent activation of its mechanical cleaning cycle. Hall effect sensors only monitor mechanical position and do not detect living beings at all.

55. The product lacked any form of redundant safety mechanism, such as pressure sensors, proximity detectors, thermal sensors, or mechanical resistance failsafes that could have prevented a catastrophic failure of the sensor system.

56. On January 27, 2025, Plaintiff Stephanie Gomez's cat, Sarabi, was gruesomely crushed to death by the Autoscooper 11 while partially inside the device, as detailed above. The

machine failed to detect Sarabi's presence, initiated its mechanical cycle, and continued to operate until Plaintiff returned home and unplugged it. Plaintiff's precious cat, Sarabi, was lifeless, stuck in the automatic litter box, her tiny body continuing to be crushed by the merciless machine, the motor was engaged, audibly "roaring." The waste compartment had somehow detached, and Sarabi was wedged between the opening and the compartment, with her fragile form twisted in an unnatural position. The Autoscooper 11 had crushed Sarabi as she was entering the device.

57. The device failed entirely to detect Sarabi's presence and did not trigger any safety shutoff. The Autoscooper 11 continued to run with its motor engaged, the lid closed, and the waste compartment dislodged, showing no signs of stopping. The machine's sensor and motor systems failed entirely, resulting in Sarabi's fatal entrapment. The waste compartment of the Autoscooper 11 detached during operation, further evidencing a manufacturing defect.

58. This was not an unintended or unforeseeable use. Cats routinely pause, crouch, or reenter a litter box, especially during cleaning cycles triggered by previous use. The design failed to accommodate this foreseeable behavior and lacked any backup mechanism to halt operation when such behavior occurred.

59. The defect in the design of the Autoscooper 11 was the direct and proximate cause of Sarabi's death. The product, when it left Defendants' control, was in a condition not reasonably contemplated by the ordinary consumer and was unreasonably dangerous for its intended use. The product's design posed a level of risk that far outweighed its limited utility as an automated convenience device.

60. The Autoscooper 11 was defectively designed. The risks of the design were known at the time of manufacture. A reasonable person would conclude that the product's utility does not outweigh the dangers inherent in placing such a design on the market. The Autoscooper 11 self-cleaning litter box, designed and sold by PetPivot, Inc. and sold through Amazon, presents risks that far outweigh its purported utility.

61. The Autoscooper 11 is marketed as a smart, self-cleaning litter box intended to reduce the burden of routine litter maintenance for cat owners. Its central utility lies in convenience. The device boasts "advanced safety sensors," an "anti-pinch scissor-angle design," and "automatic shutoff" when a cat enters mid-cycle. These representations create an expectation that the product is safe for use in homes with pets, including cats of varying sizes, ages, and health conditions.

62. However, that utility, convenience, and timesaving is entirely eclipsed by the magnitude of the risk presented by its defective and dangerously incomplete design.

63. On January 27, 2025, Plaintiff Stephanie Gomez discovered the lifeless body of her cat, Sarabi, gruesomely crushed inside the Autoscooper 11. The machine continued running despite Sarabi being partially inside. The litter box's motor was still roaring when Plaintiff returned home, and Sarabi's crushed body had to be manually retrieved by unplugging and prying open the device. The product's sensors had failed to detect Sarabi's presence. The automatic shutoff did not engage. There was no mechanical resistance failsafe to stop the device's closing mechanism when it encountered Sarabi's body. Plaintiffs were unable to pry open the unit to remove Sarabi, as the unit was mechanically locked shut. A staff member from the crematorium, dispatched to retrieve

Sarabi's remains, was the person who ultimately pried her crushed body from the interior of the litter box unit at Plaintiff's residence.

64. The tragedy that befell Sarabi was not the result of unforeseeable misuse, but of foreseeable and ordinary behavior, namely, a cat entering, re-entering or lingering inside a litter box. The risk that a cat might crouch, pause mid-entry, or only partially enter the litter area is not a remote or unusual occurrence. Rather, it is a routine, expected behavior that any reasonable designer of a cat product should anticipate.

65. Compounding this risk is the complete absence of redundancy in the safety system. The Autoscooper 11 relies only on infrared (IR) and Hall effect sensors. These are limited technologies. Hall sensors do not detect living creatures at all; they merely register motor position or rotation. There is no pressure sensor beneath the tray to detect the weight of a cat, no thermal sensor to detect body heat, no capacitive proximity sensor to detect the presence of fur or flesh, no ultrasonic or time-of-flight sensor to map the body shape. Nor was there any mechanical override to stop the motor if resistance was encountered.

66. All of these safety mechanisms were available to PetPivot at the time of design. Their inclusion would not compromise the device's function, size, or market price. Many competing automatic litter boxes currently incorporate redundant sensor systems. Commonly used sensors include pressure/weight sensors, additional IR sensors, proximity detection, and any form of failsafe shutoff. This demonstrates that a safer, economically feasible alternative design was not only possible, but already standard within the industry. Incorporating advanced safety features in self-cleaning litter boxes is both feasible and increasingly common in the industry. Such features are essential for

preventing accidents and ensuring the safety of pets, highlighting the importance of their inclusion in product design.

67. Despite this, the Autoscooper 11 was released with grossly inadequate safety protections. PetPivot actively chose not to include weight sensors, thermal sensors, additional IR sensors, proximity detection sensors, or any form of failsafe shutoff based on resistance. Instead, they misrepresented the product to consumers as "safe" and "smart," leading Plaintiff to believe the product could be trusted around her beloved cat.

68. The failure to incorporate widely available, low-cost safety features, especially in a motorized product marketed for use with living animals, is inexcusable. The result was not merely a design oversight, but a fatal one. Had the known risk of sensor failure and lack of redundancy been disclosed to consumers or addressed during the design phase, no reasonable person would have accepted the tradeoff. The utility of automation and convenience cannot possibly outweigh the horrific and foreseeable risk of death to a companion animal.

69. When the risks of the design of the Autoscooper 11 are evaluated against its benefits, the balance tips decisively against the continued marketing of the product in this form. A reasonable person, knowing what the manufacturer knew, or should have known, at the time of manufacture, would never have concluded that the Autoscooper 11's utility justified the danger. The design of the Autoscooper 11 is unreasonably dangerous and defective. In balancing the risks and utility of the product's design, the following factors find the product defectively designed: There is a likelihood of severe injury or death of the cat using the product. The defective design makes fatal injury of a cat not only possible, but likely, in routine unsupervised use. There are available safer alternative

Case 1:25-cv-05622-LJL    Document 1-1    Filed 07/08/25    Page 22 of 48

designs to protect the cat using the device. There are numerous comparable products that already incorporate pressure, thermal, proximity sensors. These alternatives were technologically and economically feasible at the time of manufacture and would not have altered the product's core function or price.

70. The added safety features of thermal sensors, additional infrared sensors, weight sensors, anti-pinch infrared sensors, intelligent detection, proximity sensors, remote alarm, accident prevention system would have prevented death without impairing convenience. These sensors immediately stop the work of the litter box when unknown objects or increased weight are detected or as soon as it detects cat activity nearby and inside.

71. Plaintiff Stephanie Gomez reasonably relied on representations that the product would stop automatically when a cat was present.

72. As mass-market retailers and manufacturers, Defendants were fully capable of distributing the marginal cost of additional safety features across units sold.

73. The Autoscooper 11 failed to incorporate proper safety mechanisms to detect the presence of a cat and stop the cleaning cycle operation to avoid injury or death to the cat.

74. The Autoscooper 11's design failed to include an effective anti-pinch mechanism or automatic shutoff feature as advertised.

75. The defect in the Autoscooper 11's design existed when the product left the Defendants' control.

76. The Autoscooper 11 was sold to Plaintiff Stephanie Gomez's mother who gifted the Autoscooper 11 to Plaintiff Stephanie Gomez and Plaintiff Stephanie Gomezreceived the Autoscooper 11 in the same condition it was in when it left the defendants' control.

77. Plaintiff Stephanie Gomez was using the Autoscooper 11 in a reasonably foreseeable manner.

78. Sarabi was using the Autoscooper 11 in a reasonably foreseeable manner.

79. The defect in the Autoscooper 11's design was the direct and proximate cause of Plaintiff Stephanie Gomez 's cat's gruesome and painful death.

80. The failure of the Autoscooper 11 to detect Sarabi's presence, stop the cleaning cycle, and release the mechanism directly resulted in Sarabi's death.

81. But for the defective design of the Autoscooper 11, Sarabi would not have been trapped, crushed, and killed by the device.

82. The Autoscooper 11 was being used for its intended purpose at the time of the incident.

83. Plaintiff Stephanie Gomez was using the Autoscooper 11 as a cat litter box, which is its intended and advertised purpose.

84. Plaintiff Stephanie Gomez had followed all instructions provided in the product manual for the proper use of the Autoscooper 11.

85. The design defect was not a matter of consumer selection or failure to opt into optional safety equipment. There was no optional safety module available. Nor was Plaintiff Stephanie Gomez provided a meaningful choice between the design marketed and a safer alternative. The risk was not disclosed, nor was the option to disable automatic mode identified as a necessary step to avoid death. Upon information and belief, PetPivot, Inc. and Amazon were aware that the product suffered from sensor failure and dangerous defects. Despite this knowledge, they continue to market, distribute, and profit from the sale of the Autoscooper 11 without issuing recalls, modifying the design, or providing appropriate warnings.

86. The product was used in a reasonably foreseeable manner. Plaintiff Stephanie Gomez followed all setup instructions and placed the litter box in an appropriate location. Plaintiff's cat met the required age and weight specifications and operated the machine in automatic mode, exactly as advertised and intended.

87. As manufacturers and sellers, Defendants were in the best position to recognize the dangers posed by their design and implement safety alternatives before releasing the product into the stream of commerce. Their failure to do so renders them strictly liable.

88. Individual Defendants Xianxue Zhou, President of PetPivot, Inc. and Poppy Xie, Chief Executive Officer of PetPivot, Inc., are equally liable.

89. The defective design of the Autoscooper 11 was the direct and proximate cause of Sarabi's death and the direct and proximate cause of Plaintiff's resulting emotional injury, emotional distress, and trauma.

90. This tragic loss was not a fluke or result of misuse, but the direct and foreseeable result of a fatally deficient design.

91. Therefore, Plaintiffs have suffered damages and respectfully demand judgment against Defendants on the First Cause of Action for strict products liability based on defective design, as Plaintiffs have suffered damages, including actual, compensatory damages, punitive damages, damages for emotional distress and mental anguish, loss of companionship, Attorneys' fees, costs, and the amount of damages sought exceed the jurisdictional limits of all lower courts which otherwise would exercise jurisdiction over this matter.

92. Plaintiffs are also entitled to an award of punitive damages in an amount not less than $3 million. Defendants' conduct was malicious, wanton, and undertaken with willful and

reckless disregard for the safety of animals and the emotional well-being of their human companions. By knowingly placing a defectively designed and dangerously inadequate product into the stream of commerce, despite clear and foreseeable risks of fatal injury, Defendants demonstrated a conscious indifference to the life-threatening hazards posed to pets and to the severe emotional trauma inflicted upon owners who would witness such preventable suffering and death. The egregious nature of Defendants' misconduct justifies the imposition of punitive damages to punish such callous disregard and to deter similar future misconduct in the manufacture and sale of pet safety products.

## SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS

### Strict Products Liability – Failure to Warn

93. Plaintiffs repeat and reallege each of the preceding paragraphs as if fully set forth herein.

94. At all relevant times, Defendants PetPivot Inc., Amazon.com, Inc., Amazon.com Services LLC, and Amazon Marketplace designed, manufactured, marketed, distributed, and sold the Autoscooper 11 Open-top Self-Cleaning Smart Cat Litter Box to consumers throughout the State of New York, including Bronx County.

95. Defendant PetPivot Inc. designed, manufactured, marketed, distributed, and sold the Autoscooper 11 Open-top Self-Cleaning Smart Cat Litter Box (Model ACT-58TW AS11) to consumers throughout the State of New York, including in Bronx County.

96. Defendants Amazon.com, Inc., Amazon.com Services LLC, and Amazon Marketplace marketed, distributed, and sold the Autoscooper 11 Open-top Self-Cleaning Smart Cat Litter Box (Model ACT-58TW AS11) to consumers throughout the State of New York, including in Bronx County.

97. Defendants marketed the Autoscooper 11 as a "smart," "safe," and "fully automated" litter solution for cat owners. Advertising statements from Defendants claimed the product was equipped with multiple "safety protection devices," including infrared sensors and Hall sensors, and that the system would automatically stop operating when a cat was inside the chamber. These representations appeared on the PetPivot, Inc. website and on Amazon.com, and in product promotional materials.

98. The Amazon listing assured consumers that the device could operate safely for long periods without supervision, providing "peace of mind" to pet owners. Consumers were led to believe that the product was specifically engineered to prevent harm to animals during unattended use.

99. Despite these representations, the product failed to include adequate warnings regarding foreseeable hazards, including the possibility of sensor failure, mechanical entrapment, and crushing injury or death to pets using the device in exactly the way intended.

100. On January 27, 2025, Plaintiff Stephanie Gomez's cat, Sarabi, was killed by the Autoscooper 11 when it activated its mechanical waste-cleaning mechanism while Sarabi was entering the device, as detailed above. The product failed to detect Sarabi's presence and continued to operate, crushing her to death. The device was still running when Plaintiff returned home, requiring her to unplug the unit. Plaintiffs could not pry Sarabi's corpse from the machine. A staff member from the crematorium, dispatched to retrieve Sarabi's remains, was the person who ultimately pried her crushed body from the interior of the litter box unit at Plaintiff's residence.

Case 1:25-cv-05622-LJL    Document 1-1    Filed 07/08/25    Page 27 of 48

101.    The user manual that accompanied the product included multiple safety-related notes, but none addressed or warned of the risk that actually caused Sarabi's death. Instead, the manual focused on basic setup and operational instructions, including: That the cat should weigh more than 3 pounds and be older than 6 months to use Automatic Mode; That users should switch to Manual Mode by holding the "Clean" button for 5 seconds if the cat is too small, too young, pregnant, or nursing; That the unit should be placed on flat indoor surfaces away from direct sunlight and away from open flames; That children should only use the machine under adult supervision; That users should not drag the machine, submerge the base in water, or use gasoline for cleaning.

102.    The manual made no mention whatsoever of the possibility that: Infrared or Hall sensors might fail or become obstructed; The product may continue operating even if a cat is partially inside; The device lacks redundant detection systems (e.g., pressure, thermal, or proximate sensors); The system may not engage a mechanical failsafe if an obstruction, such as a cat's body, is encountered; A pet may be fatally injured or crushed by the mechanical cleaning mechanism during normal use.

103.    The user manual's only safety instruction vaguely related to injury prevention, advising users to manually disable the automatic mode for smaller or younger cats, did not apply to Sarabi, who met the stated weight and age requirements. Thus, Plaintiff had no reason to disable automatic mode, and no warning indicated that doing so might be necessary to prevent fatal harm even for qualifying cats.

104.    The absence of these critical warnings rendered the product not reasonably safe. A reasonable consumer using the product as intended, based on the manual's instructions

and Defendants' safety claims, would have no reason to suspect that the sensors might fail or that the device could cause mechanical trauma.

105. The product's core safety risk, mechanical entrapment caused by failed detection, was foreseeable and existed at the time it left Defendants' control. Defendants had the ability and duty to warn about these hazards based on their knowledge of the sensor limitations and absence of redundant protection.

106. Had Plaintiff Stephanie Gomez been warned, either through the packaging, advertising, or user manual, that the sensors could malfunction or that the device lacked backup safety systems, she would not have permitted Sarabi to use it unsupervised or would not have used it at all.

107. The failure to warn was a substantial cause of Sarabi's death and a substantial cause of Plaintiff Stephanie Gomez's resulting trauma, emotional distress, and loss of companionship.

108. Defendants had an independent duty to warn of all known or reasonably foreseeable risks associated with the use of a product, especially when the product is marketed for unattended use with living animals. PetPivot, Inc. and the Amazon Defendants failed in that duty by omitting essential safety warnings while falsely reinforcing consumer trust in the product's autonomous protection features. Their failure to do so renders them strictly liable.

109. Individual Defendants Xianxue Zhou, President of PetPivot, Inc. and Poppy Xie, Chief Executive Officer of PetPivot, Inc. are equally liable.

110. The Autoscooper 11 was defective due to inadequate warnings or instructions. The Autoscooper 11 lacked adequate warnings about the risk of injury or death to cats

during operation, despite being marketed as safe and having advanced safety features. The defect existed at the time the Autoscooper 11 left Defendants' control. The Autoscooper 11 was sold with inadequate warnings, as evidenced by the lack of warnings about potentially fatal risks in the product manual and marketing materials.

111. The defect was a substantial factor in causing Sarabi's death and Plaintiff's emotional injury and trauma.

112. The lack of adequate warnings about the potential risks of the Autoscooper 11 led to the death of Plaintiff Stephanie Gomez's cat, Sarabi, as Plaintiff Stephaine Gomez was unaware of the possibility of such a catastrophic failure.

113. Plaintiff Stephanie Gomez was using the Autoscooper 11 in a reasonably foreseeable manner. Sarabi was using the Autoscooper 11 in a reasonably foreseeable manner.

114. Defendants knew, or should have known, of the dangerous defects in the Autoscooper 11. Upon information and belief, Defendants were made aware of the defects through multiple consumer complaints and reports of injury or death caused by the device. Moreover, upon information and belief, Defendants have issued refunds to purchasers of the Autoscooper 11 following such incidents. Upon information and belief, PetPivot, Inc. and Amazon were aware that the product suffered from sensor failure and dangerous defects. Despite this knowledge, they continue to market, distribute, and profit from the sale of the Autoscooper 11 without issuing recalls, modifying the design, or providing appropriate warnings.

115. The Autoscooper 11 is and was defective due to inadequate warnings or instructions. The Autoscooper 11 lack and lacked adequate warnings about the potential

risk of pet injury or death. The device failed to include warnings about the possibility of malfunction of its safety features or the potential for a cat to become trapped and injured in the device. The defect existed when the product left the defendant's control. The safety features, including the infrared and Hall sensors, failed to function as advertised, indicating that the defect existed when the product left the Defendants' control.

116. The defect was a substantial factor in causing the Plaintiffs' damages. As a direct result of the inadequate warnings, Sarabi was crushed to death by the Autoscooper 11, causing severe emotional distress and trauma to Plaintiff Stephanie Gomez.

117. Had adequate warnings been provided, Plaintiff Stephanie Gomez would have chosen not to use the product, preventing Sarabi's death and Plaintiff's emotional distress.

118. Therefore, Plaintiffs have suffered damages and respectfully demand judgment against Defendants on the Second Cause of Action for strict products liability based on failure to warn, as Plaintiffs have suffered damages, including actual, compensatory damages, punitive damages, damages for emotional distress and mental anguish, loss of companionship, Attorneys' fees, costs, and the amount of damages sought exceed the jurisdictional limits of all lower courts which otherwise would exercise jurisdiction over this matter.

119. Plaintiffs are also entitled to an award of punitive damages in an amount not less than $3 million. Defendants' conduct was malicious, wanton, and undertaken with willful and reckless disregard for the safety of animals and the emotional well-being of their human companions. By knowingly placing a defectively designed and dangerously inadequate product into the stream of commerce, despite clear and foreseeable risks of fatal injury, Defendants demonstrated a conscious indifference to the life-threatening

hazards posed to pets and to the severe emotional trauma inflicted upon owners who would witness such preventable suffering and death. The egregious nature of Defendants' misconduct justifies the imposition of punitive damages to punish such callous disregard and to deter similar future misconduct in the manufacture and sale of pet safety products.

### THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS

### Strict Products Liability – Manufacturing Defect

120.    Plaintiffs repeat and reallege each of the preceding paragraphs as if fully set forth herein.

121.    At all relevant times, Defendants PetPivot Inc., Amazon.com, Inc., Amazon.com Services LLC, and Amazon Marketplace designed, manufactured, marketed, distributed, and sold the Autoscooper 11 Open-top Self-Cleaning Smart Cat Litter Box to consumers throughout the State of New York, including Bronx County.

122.    Defendant PetPivot Inc. designed, manufactured, marketed, distributed, and sold the Autoscooper 11 Open-top Self-Cleaning Smart Cat Litter Box (Model ACT-58TW AS11) to consumers throughout the State of New York, including in Bronx County.

123.    Defendant Amazon.com, Inc., Amazon.com Services LLC, and Amazon Marketplace marketed, distributed, and sold the Autoscooper 11 Open-top Self-Cleaning Smart Cat Litter Box (Model ACT-58TW AS11) to consumers throughout the State of New York, including in Bronx County.

124.    The specific unit of the Autoscooper 11 that caused the death of Plaintiff's cat, Sarabi, was defective because it deviated in a material way from the product's intended design specifications. This deviation rendered the unit not reasonably safe for its intended

Case 1:25-cv-05622-LJL    Document 1-1    Filed 07/08/25    Page 32 of 48

and foreseeable use and was the proximate cause of Sarabi's death and Plaintiff's resulting emotional suffering and injuries.

125.    The Autoscooper 11 contains a manufacturing defect as it departs from its intended design due to errors in construction, assembly, or quality control.

126.    The Autoscooper 11 deviated from PetPivot's own advertised performance specifications. According to Defendants' marketing, the device was designed to detect a cat's presence and cease operation immediately upon detection. This unit failed to do so, despite Sarabi meeting all qualifying usage criteria and Plaintiff using the product exactly as instructed.

127.    The deviation likely arose from one or more specific manufacturing errors, including, but not limited to malfunctioning or miscalibrated infrared (IR) sensors incapable of recognizing Sarabi's partial presence in the chamber; defective Hall effect sensors that failed to register the motor's positional limits or an obstruction; incorrect or loose wiring, faulty circuit board connections, or firmware miscommunication between detection sensors and the motor; failure of the motor interrupt protocol to engage upon encountering mechanical resistance (e.g., Sarabi's body).

128.    The manufacturing defect caused Plaintiff Stephaine Gomez's cat to be crushed and killed as she entered the Autoscooper 11 device. The product did not perform as intended. Any causes of Sarabi's death are not attributable to Plaintiff's and Sarabi's use of the product. There was no misuse or modification.

129.    Plaintiff Stephanie Gomez followed all safety and operational instructions provided with the product. Plaintiff Stephaine Gomez installed the Autoscooper 11 on a flat indoor surface, ensured her cat met the minimum weight and age requirements, and

never tampered with or modified the device. There is no evidence that the device was damaged, misused, or improperly maintained.

130.    Despite proper installation and use, the product catastrophically malfunctioned during normal, foreseeable operation. The unit failed to detect Sarabi's presence, activation of its cleaning cycle continued while she was partially inside the device, trapping her and crushing her to death.

131.    On January 27, 2025, Plaintiff Stephanie Gomez discovered Sarabi's lifeless body halfway inside the Autoscooper 11. The mechanical cleaning device was still running. Sarabi was being crushed by the Autoscooper 11. The product failed to detect Sarabi's presence as the mechanical waste-cleaning mechanism had already been activated and continued to operate while Sarabi was partially inside, crushing her torso nonstop for hours.

132.    The Autoscooper 11 had trapped and crushed Sarabi as she was entering the device. The device failed entirely to detect Sarabi's presence and did not trigger any safety shutoff. The Autoscooper 11 continued to run with its motor engaged, the lid closed, and the waste compartment dislodged, showing no signs of stopping. It was only after Plaintiff Stephanie Gomez unplugged the machine that the unit stopped operating. By then, Sarabi was already cold and rigid. Plaintiff Ms. Gomez struggled to pry the machine open to retrieve Sarabi's body. Autoscooper 11 seemed to have its mechanical grip on Sarabi, refusing to let go. Plaintiffs could not pry the machine open to remove Sarabi's body. A staff member from the crematorium, dispatched to retrieve Sarabi's remains, was the person who ultimately pried her crushed body from the interior of the litter box unit at Plaintiff's residence.

133.     The device continued to operate, without sensing Sarabi's presence, until manually unplugged, which is inconsistent with its intended safety behavior.

134.     The product's failure to shut off in the presence of a physical obstruction, despite marketing promises and intended design behavior, establishes that this particular unit did not conform to its manufacturing specifications. A properly constructed unit, consistent with PetPivot's own claims, would have stopped immediately and prevented Sarabi's death. The waste compartment of the Autoscooper 11 detached during operation, further evidencing a manufacturing defect.

135.     The defect was present at the time the product left Defendants' control and entered the stream of commerce. It was not caused by any post-sale incident, modification, or failure to follow instructions by Plaintiff.

136.     Plaintiff Stephanie Gomez was using the Autoscooper 11 in a reasonably foreseeable manner.

137.     Sarabi was using the Autoscooper 11 in a reasonably foreseeable manner.

138.     The Autoscooper 11 deviated from its design in a way that makes it not reasonably safe for use, as it was defectively manufactured.

139.     Defendants knew, or should have known, of the dangerous defects in the Autoscooper 11. Upon information and belief, Defendants were made aware of the defects through multiple consumer complaints and reports of injury or death caused by the device. Moreover, upon information and belief, Defendants have issued refunds to purchasers of the Autoscooper 11 following such incidents. Upon information and belief, PetPivot, Inc. and Amazon were aware that the product suffered from sensor failure and dangerous defects. Despite this knowledge, they continue to market, distribute, and profit

from the sale of the Autoscooper 11 without issuing recalls, modifying the design, or providing appropriate warnings.

140.     Because the defect in Plaintiff's unit directly and proximately caused the death of Sarabi, during normal and intended use, and no other plausible cause can be shown, Plaintiff has met the prima facie standard for a manufacturing defect claim.

141.     Defendants are strictly liable for introducing into the stream of commerce a unit that deviated from its intended design, lacked basic safety performance, and directly and proximately caused Sarabi's death and directly and proximately caused Plaintiff to suffer extreme emotional distress and trauma.

142.     Individual Defendants Xianxue Zhou, President of PetPivot, Inc. and Poppy Xie, Chief Executive Officer of PetPivot, Inc., are equally liable.

143.     Therefore, Plaintiffs have suffered damages and respectfully demand judgment against Defendants on the Third Cause of Action for strict products liability based on manufacturing defect, as Plaintiffs have suffered damages, including actual, compensatory damages, punitive damages, damages for emotional distress and mental anguish, loss of companionship, Attorneys' fees, costs, and the amount of damages sought exceed the jurisdictional limits of all lower courts which otherwise would exercise jurisdiction over this matter.

144.     Plaintiffs are also entitled to an award of punitive damages in an amount not less than $3 million. Defendants' conduct was malicious, wanton, and undertaken with willful and reckless disregard for the safety of animals and the emotional well-being of their human companions. By knowingly placing a defectively designed and dangerously inadequate product into the stream of commerce, despite clear and foreseeable risks of

fatal injury, Defendants demonstrated a conscious indifference to the life-threatening hazards posed to pets and to the severe emotional trauma inflicted upon owners who would witness such preventable suffering and death. The egregious nature of Defendants' misconduct justifies the imposition of damages to punish such callous disregard and to deter similar future misconduct in the manufacture and sale of pet safety products.

## FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS

### Deceptive Acts and False Advertising

### (Violation of New York General Business Law §§ 349 and 350)

145. Plaintiffs repeat and reallege each of the preceding paragraphs as if fully set forth herein.

146. Defendant PetPivot Inc. designed, manufactured, marketed, distributed, and sold the Autoscooper 11 Open-top Self-Cleaning Smart Cat Litter Box (Model ACT-58TW AS11) to consumers throughout the State of New York, including in Bronx County.

147. Defendant Amazon.com, Inc., Amazon.com Services LLC, and Amazon Marketplace marketed, distributed, and sold the Autoscooper 11 Open-top Self-Cleaning Smart Cat Litter Box (Model ACT-58TW AS11) to consumers throughout the State of New York, including in Bronx County.

148. Defendants PetPivot Inc., Amazon.com, Inc., Amazon.com Services LLC, and Amazon Marketplace engaged in materially deceptive and misleading acts and practices in the course of business, trade, and commerce within the State of New York, in violation of New York General Business Law §§ 349 and 350.

149. GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business," and GBL § 350 prohibits "[f]alse advertising in the conduct of any business."

Case 1:25-cv-05622-LJL   Document 1-1   Filed 07/08/25   Page 37 of 48

These statutes are designed to protect consumers from misleading, deceptive, and fraudulent business practices that are consumer-oriented and materially harmful.

150. Defendants promoted the Autoscooper 11 Open-top Self-Cleaning Smart Cat Litter Box as a highly safe, intelligent, and convenient product. The official Amazon.com product listing for the item, jointly created or authorized by Defendants, stated the following under "About this item":

**FREE HANDS, SAVE TIME**: Say goodbye to tedious cat litter cleanup! Automatically and promptly clears the litter and keeps it clean, providing your cat with meticulous care and comfort. Self-cleaning litter box like having a personal assistant that effortlessly frees up your hands so you can enjoy more quality time. In addition, it supports unattended operation for long periods of time, solving your cat hygiene problems during short trips.

**INTELLIGENT SAFETY SYSTEM**: We understand your concern about your cat's safety. Therefore, our automatic litter box is equipped with multiple safety protection devices, including infrared sensors and Hall sensors, to ensure that it stops running when your cat is using it, avoiding potential injuries, giving your beloved cat peace of mind and you more peace of mind.

**LOW NOISE DESIGN, TRANQUIL MOMENTS**: Self-cleaning cat litter box operates at only 32 dB, quietly and without disturbance, ensuring you and your cat enjoy a peaceful night's sleep…

**ELEGANT OPEN TOP DESIGN**: The unique open-top design cat litter box is designed with your cat's comfort in mind. The spacious top allows your cat to move freely without feeling confined. The open top keeps the interior clean and provides a safe, protected space for your cat, whereas other smaller side openings can lead to kitten entrapment.

**COST EFFECTIVE AND STABLE:** Our cat litter box minimizes the frequency of litter changes and reduces the amount of litter wasted.

**REMOVABLE CONSTRUCTION, EASY CLEANING**

**EFFICIENT AFTER-SALES SUPPORT**
https://www.amazon.com/AutoScooper-Cleaning-Automatic-Integrated-Protection/dp/B0DQW7857Q/ref=sr_1_1_sspa?crid=M515FWRNBRYQ&dib=eyJ2I joiMSJ9.Ve7ZGhav-0nAZINnLExXNtAanRlNaWRr2cF0X8TYMMOmlVK33aGV-

ddbF-FOu4-bsWVHz_cs1-MxRPYP-
gaEojfS8NCiWLfSLW9ebwrXTvOogj70CkqIB8hVgb45nEQSfGM30Mo-ID5-
iWtJgjWucpjP8oAKDk1EF0jzUpmDJbiNH1x9jQIFnL74v2fiTGwB5f6KMvsZxv1H
maKj7v9OYbC5FvqvDOs0IOuWOMfOUbDycY8m_J6_W-
T20P4Ar7FRDflqhh2Ph5FKmXdCsMQ_VBZSnlkIOCY0iXBWcwCmyso.VWeAR
BfbOm_gxiG2TH82UZ0aoNUe49e2GwqFJUcbcCM&dib_tag=se&keywords=petpiv
ot+autoscooper+11&qid=1747345169&sprefix=%2Caps%2C103&sr=8-1-
spons&sp_csd=d2lkZ2V0TmFtZT1zcF9hdGY&psc=1

151. Defendants promoted the Autoscooper 11on the PetPivot website:

As PETPIVOT Autoscooper Automatic Litter Scoop, Fully Automatic, Clean and Hygenic, Super Safe …(https://petpivot.com/)

Autoscooper 11 Open-top Self-cleaning Smart Cat Litter Box-PetPivot

…
Why choose Autoscooper 11?
Always Opening, Multi-Sensor, Open Design
…
Keep Cats Safe
…
Safety opening
…
Anti-pinch mechanism.  5 infrared sensors …(https://petpivot.com/products/litter-box)


**Safety First**: This automatic litter box is equipped with multiple sensors that ensure your cat's safety. It operates only when your cat is outside, preventing any accidents and ensuring a worry-free experience for both you and your pet. (https://petpivot.com/blogs/blogs/say-goodbye-to-litter-box-woes-with-the-ultimate-automatic-cat-litter-box)

On PetPivot's Website's Blog, PetPivot claims

If you're a cat owner, you know that dealing with a traditional litter box can be a messy and time-consuming task. But did you know that there's a better way? Enter the automatic cat litter box – a game-changer for both cats and their owners.

Here are five reasons why every cat owner needs to invest in an automatic litter box:

1. **Convenience:** Say goodbye to daily scooping! Automatic litter boxes are equipped with self-cleaning mechanisms that eliminate the need for manual scooping, saving you time and effort.
2. **Odor Control:** Tired of dealing with unpleasant litter box odors? Automatic litter boxes often come with built-in odor control features, keeping your home smelling fresh.

3. **Health Benefits:** A clean litter box is essential for your cat's health and well-being. With automatic litter boxes, you can ensure that your cat always has a clean and hygienic bathroom environment.
4. **Peace of Mind:** Whether you're at work or on vacation, you can rest assured that your cat's litter box is being taken care of. Automatic litter boxes provide peace of mind knowing that your cat's needs are being met even when you're away.
5. **Happy Cat, Happy Owner:** By investing in an automatic litter box, you're not only making your life easier but also improving your cat's quality of life. A clean litter box can lead to a happier and healthier cat, resulting in a happier owner.

Don't let the hassle of a traditional litter box hold you back from enjoying quality time with your furry friend. Upgrade to an automatic litter box today and experience the difference for yourself!

(https://petpivot.com/blogs/blogs/5-reasons-why-every-cat-owner-needs-an-automatic-litter-box)

152. These statements gave the clear and unqualified impression that the Autoscooper 11 was not only safe and reliable but specifically engineered to detect a cat's presence and prevent any risk of injury during use, including while the owner was away. The device was represented as suitable for "unattended operation for long periods of time," providing "peace of mind" and "meticulous care and comfort" to cats.

153. These representations are materially false, deceptive, and misleading, because the product is not in fact equipped with safety systems capable of reliably detecting a cat's presence or preventing injury during normal use.

154. The safety system relied exclusively on infrared sensors, which can easily fail to detect slow or partial entry, and Hall effect sensors, which only monitor motor rotation and do not detect living beings. The Autoscooper 11 lacked appropriate sensors to protect a cat from serious injury or death, including: Pressure sensors, Thermal sensors, proximity detectors, or any mechanical failsafe that would prevent movement if an obstruction (such as a cat) was present.

Case 1:25-cv-05622-LJL    Document 1-1    Filed 07/08/25    Page 40 of 48

155. On January 27, 2025, Plaintiff Stephanie Gomez's cat, Sarabi, was killed by the Autoscooper 11 during precisely the type of unsupervised use that the product was marketed as supporting. While Sarabi was partially inside the litter chamber, the cleaning mechanism continued activation, and failed to detect her presence, crushed her to death, continuously, for hours. The machine was still running when Plaintiff returned home, and Sarabi was dead.

156. At no point did the product's Amazon or PetPivot's listings or user manual disclose the limitations of the sensors, the lack of redundant safety features, or the potential for fatal mechanical entrapment. These omissions were critical, as they directly undermined the safety claims that were central to Defendants' marketing strategy.

157. The omissions and affirmatively misleading statements were consumer-oriented, made in the context of mass marketing and sale to the general public across New York State and beyond, and were not unique to Plaintiff.

158. The representations were material, as safety and autonomous operation are primary concerns for pet owners purchasing self-cleaning litter boxes. These features were clearly intended to and did induce consumer reliance and purchase.

159. Plaintiff Stephanie Gomez relied on these representations when accepting and using the product in her home. She used the product exactly as intended and represented, plugged in, unattended, while she was away from home. As a direct result of that reliance, her cat was tragically and gruesomely killed.

160. Defendants knew or should have known that these safety representations were misleading and that the device was not equipped with adequate sensor coverage to

reliably protect pets from harm. Their failure to disclose the limitations of the safety features was reckless and grossly negligent.

161. Plaintiff Stephaine Gomez suffered injury, including the loss of her beloved cat, Sarabi, and resulting emotional injury and trauma, as a direct result of Defendants' deceptive business practices and false advertising in violation of GBL §§ 349 and 350.

162. Plaintiffs seek statutory damages, treble damages, injunctive relief, attorneys' fees, and punitive damages as permitted by law.

163. Individual Defendants Xianxue Zhou, President of PetPivot, Inc. and Poppy Xie, Chief Executive Officer of PetPivot, Inc. are equally liable.

164. Therefore, Plaintiffs have suffered damages and respectfully demand judgment against Defendants on the Fourth Cause of Action for Deceptive Acts and False Advertising, as Plaintiffs have suffered damages. Plaintiffs seek statutory damages, treble damages, actual, compensatory damages, punitive damages, damages for emotional distress and mental anguish, loss of companionship, Attorneys' fees, costs, and the amount of damages sought exceed the jurisdictional limits of all lower courts which otherwise would exercise jurisdiction over this matter.

165. Plaintiffs are also entitled to an award of punitive damages in an amount not less than $3 million. Defendants' conduct was malicious, wanton, and undertaken with willful and reckless disregard for the safety of animals and the emotional well-being of their human companions. By knowingly placing a defectively designed and dangerously inadequate product into the stream of commerce, despite clear and foreseeable risks of fatal injury, Defendants demonstrated a conscious indifference to the life-threatening hazards posed to pets and to the severe emotional trauma inflicted upon owners who would witness

such preventable suffering and death. The egregious nature of Defendants' misconduct justifies the imposition of punitive damages to punish such callous disregard and to deter similar future misconduct in the manufacture and sale of pet safety products.

## FIFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS

### Negligent Infliction of Emotional Distress

166. Plaintiffs repeat and reallege each of the preceding paragraphs as if fully set forth herein.

167. Defendants owed a duty to all foreseeable users of the Autoscooper 11 Open-top Self-Cleaning Smart Cat Litter Box, including Plaintiff Stephanie Gomez, to design, manufacture, market, and sell the product in a manner that was reasonably safe for use in a domestic environment, and to protect users and their pets from preventable mechanical harm.

168. Defendant PetPivot Inc. designed, manufactured, marketed, distributed, and sold the Autoscooper 11 Open-top Self-Cleaning Smart Cat Litter Box (Model ACT-58TW AS11) to consumers throughout the State of New York, including in Bronx County.

169. Defendant Amazon.com, Inc., Amazon.com Services LLC, and Amazon Marketplace marketed, distributed, and sold the Autoscooper 11 Open-top Self-Cleaning Smart Cat Litter Box (Model ACT-58TW AS11) to consumers throughout the State of New York, including in Bronx County.

170. On January 27, 2025, Plaintiff Stephanie Gomez returned home from work and encountered a gruesome, traumatizing scene: her cat Sarabi was visibly trapped inside the Autoscooper 11, which was still powered on, the motor engaged, audibly "roaring," and the waste compartment visibly dislodged. Sarabi's body was being crushed at the

midsection, the area of her vital organs. Her lifeless upper torso remained trapped and lodged inside the device, while her lower half remained outside, motionless.

171. The machine had failed to detect Sarabi's presence and continued operating unabated while her body was being crushed. Plaintiff had to manually unplug the device. Plaintiff realized that she did not have the strength to pry open the device to remove Sarabi's corpse. A staff member from the crematorium, dispatched to retrieve Sarabi's remains, was the person who ultimately pried her crushed body from the interior of the litter box unit at Plaintiff's residence. Sarabi had been dead for hours.

172. The position and rigidity of Sarabi's body made it unmistakably clear that she had experienced a slow, torturous death, caused entirely by the device's malfunction and lack of any emergency shutoff.

173. Plaintiff Stephanie Gomez was not only present at the scene, but she was also placed in the zone of danger by Defendants' negligence. The device was still actively running when Plaintiff arrived and required immediate physical intervention. The mechanical failure that killed her cat could easily have posed harm to Plaintiff herself, especially in the process of unplugging and manually attempting to dismantle the device to free Sarabi. The machine was locked shut. Plaintiff Stephanie Gomez realized that she did not have the strength to pry open the device to remove Sarabi's corpse. A staff member from the crematorium, dispatched to retrieve Sarabi's remains, was the person who ultimately pried her crushed body from the interior of the litter box unit at Plaintiff's residence. Sarabi had been dead for hours.

174. The circumstances under which Plaintiff discovered Sarabi, hearing the machine's motor still engaged, seeing her cat's crushed body trapped inside, and being forced to

physically extricate her, constitute direct involvement and exposure to the traumatic event and in the zone of danger.

175. As a direct result of witnessing the violent and prolonged death of her beloved family member and companion, Sarabi, the cat. Plaintiff Stephanie Gomez has suffered severe emotional distress. This includes persistent flashbacks, nightmares, anxiety, depression, and psychological trauma. The image of her cat's mutilated body inside a device falsely marketed as "safe," "smart," and "automatic," has left an enduring psychological wound.

176. Defendants' negligence in designing and marketing a product without adequate safety protections, redundant sensors, or mechanical failsafes created a foreseeable risk of emotional harm to consumers like Plaintiff Stephanie Gomez. That risk was realized in the most graphic and devastating way when Plaintiff found her cat dead inside the active machine.

177. Plaintiff Stephanie Gomez's emotional distress was not abstract or removed. It was caused directly by Defendants' negligent conduct and experienced in real time, in her own home, as a result of her own necessary physical interaction with the product in its malfunctioning and dangerous state.

178. Plaintiff Stephanie Gomez may recover damages for negligent infliction of emotional distress, as she was exposed to unreasonable risk of bodily harm due to Defendants' negligence in the zone of danger. Plaintiff Stephaine Gomez was subjected to direct emotional trauma from negligently inflicted death of her beloved companion and family member, Sarabi, the cat. Defendants' conduct in placing an unreasonably dangerous product into the stream of commerce, without appropriate warnings or safety systems, was negligent and created a

Case 1:25-cv-05622-LJL    Document 1-1    Filed 07/08/25    Page 45 of 48

foreseeable and substantial risk of emotional harm to Plaintiff.

179. Plaintiff Stephanie Gomez's emotional distress is real, severe, and compensable. The trauma of witnessing her beloved cat Sarabi mutilated and trapped in a product designed for domestic use, coupled with the physical act of unplugging the device and extracting her body, is the basis for a claim of negligent infliction of emotional distress.

180. As a direct result of Defendants' intentional and negligent acts and acts constituting a willful, wanton, reckless, malicious disregard of Plaintiff's rights evincing an entire want of care or great indifference to the Plaintiff as previously alleged herein, Plaintiff is entitled to damages for $600,000, which would exercise jurisdiction over this matter.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff **STEPHANIE GOMEZ** and Plaintiff **FRANK GUEITS** demand judgment against all Defendants **PETPIVOT, INC., AMAZON.COM, INC. a/k/a AMAZON.COM SERVICES, INC. d/b/a AMAZON.COM and AMAZON MARKETPLACE, XIANXUE ZHOU, POPPY XIE** for damages in a sum exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction hereof, on the First Cause of Action; the Second Cause of Action; the Third Cause of Action; the Fourth Cause of Action; the Fifth Cause of Action and attorney fees and costs, and in such sum as the Court would find fair, adequate, and just and such other and further relief as the Court deems just and

equitable, including actual, compensatory, attorney fees and costs, and punitive damages of no less than $3 million.

Dated:   New York, New York
June 9, 2025

_____
Peggy L. Collen
Attorney for Plaintiffs
1430 Broadway, Suite 1105
New York, New York 10018
646-238-9757
pcollen@pcollenlaw.com

**DEFENDANTS' ADDRESSES:**

PETPIVOT, INC.
1614 NW Riverscape Street
Portland, Oregon 97209

PETPIVOT, INC.
9570 Santa Anita Avenue, #B
Rancho Cucamonga, California 91730

AMAZON.COM, INC.
40 Terry Avenue, N.
Seattle, Washington 98109

AMAZON.COM, INC.
7 West 34th Street
New York, New York 10001

XIANXUE ZHOU
1614 NW Riverscape Street
Portland, Oregon 97209

POPPY XIE
1614 NW Riverscape Street
Portland, Oregon 97209

## ATTORNEY'S VERIFICATION

STATE OF NEW YORK　　)
　　　　　　　　　　　　)　　　ss.:
COUNTY OF NEW YORK　)

PEGGY L. COLLEN, an attorney at law duly admitted to practice in the Courts of the State of New York, affirms under the penalties of perjury as follows:

1. I am the Attorney for the Plaintiffs in the within proceeding.

2. I have read the foregoing Complaint and know the contents thereof which are true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters, I believe that they are true.

3. The grounds for my knowledge and beliefs are based on Plaintiffs' oral statements, and records and documents furnished to me by the Plaintiffs.

4. This verification is being made by me because the Plaintiffs do not reside in the County of New York where I maintain an office.

Dated: June 9, 2025

_____
Peggy L. Collen

*Index No.*　　　　　　　*Year:* 2025

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

---

STEPHANIE GOMEZ, FRANK GUEITS,

　　　　Plaintiff,

　　-against-

PETPIVOT, INC., AMAZON.COM, INC. a/k/a AMAZON.COM SERVICES, INC. d/b/a AMAZON.COM and AMAZON MARKETPLACE, XIANXUE ZHOU, POPPY XIE,

　　　　Defendants.

---

### SUMMONS & VERIFIED COMPLAINT

---

**PEGGY L. COLLEN**
**ATTORNEY-AT-LAW**
*Attorney for Plaintiffs*
1430 Broadway, Suite 1105
New York, New York 10018
646-238-9757
pcollen@pcollenlaw.com

---

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed documents are not frivolous.

Dated: June 9, 2025　　　　　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　　　　　　　　　　　　　　PEGGY L. COLLEN

---

Peggy L. Collen, Esq.
*Attorney for Plaintiffs*